**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL TYRONE McCULLON,** | : | **Civil No. 3:10-CV-1541** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **( Judge Kosik)** |
| | : | |
| **THOMAS BROUSE, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of The Case

#### A.     Procedural History

This is a *pro se* civil rights case that was first brought by a federal prisoner, Tyrone McCullon, through the filing of a civil rights complaint on July 27, 2010, (Doc. 1), which he subsequently amended on August 23, 2010, (Doc. 14) and December 3, 2010. (Doc. 36.) In these complaints, McCullon alleged that prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment by employing excessive force against him during, and after, an August 19, 2009, affray at the Lewisburg Federal Penitentiary. (Id.) McCullon further alleged that prison officials conspired to falsely discipline him for his role in this physical confrontation with staff. (Id.) McCullon named the correctional staff who were allegedly involved in this affray as Defendants, and also named as Defendants: (1)a

correctional official who wrote an incident report which served as part of the factual basis for findings that led to McCullon's discipline; (2) the correctional supervisors who allegedly oversaw McCullon's care in the hours immediately following this incident; (3) correctional investigators, who played roles in the disciplinary proceedings brought against McCullon, investigators who McCullon faults for conducting an inadequate investigation into this matter; and (4) the prison warden, who is named as a Defendant because he was responsible for the operation of the prison in August 2009, and, in McCullon's view, failed to adequately respond to his complaints. (Id.)

On December 20, 2010, the Defendants filed a motion to dismiss these complaint, or in the alternative for summary judgment. (Doc. 37. ) Having received this motion, we set a briefing schedule in this case, which required the Defendants to file a brief in support of this motion on January 3, 2011, and directed McCullon to file a brief in opposition to the motion no later than January 17, 2011. (Doc. 39.)

The Defendants complied with this order by filing a brief and related documents in this case on January 3, 2011. (Docs. 44-45.) While McCullon initially submitted a letter indicating that he received his December 20, 2010, legal mail in this case on December 27, 2010, (Doc. 43), he failed to file a response to this motion, as required by the Court's December 20, 2010 briefing schedule order. After three weeks

elapsed without a response from McCullon, we deemed briefing to be closed in this case,   considered this motion ripe for resolution, and issued a report and recommendation in this matter.(Doc. 49.) McCullon then belatedly responded to the Court, filing objections and seeking further opportunities to litigate these issues. (Docs. 50-53.)

The district court granted McCullon this opportunity to further present his claims. (Doc. 54.) We then withdrew our earlier report and recommendation and set a schedule for McCullon to brief this motion. (Doc. 55.) That briefing is now completed, (Docs. 56-61), and this motion is ripe for resolution.

For the reasons set forth below it is recommended that the Defendant's motion to dismiss, or in the alternative for summary judgment, be granted, in part, and denied, in part. Specifically, it is recommended that McCullon's complaints be dismissed as to Defendants, Bledsoe, Perrin, Raup and Fosnot, but that the motion be denied as to Defendants Brouse, Stuart, Johnson and Sassaman since disputed material factual issues exist which preclude judgment for these Defendants at this time.

## B.    Factual Background

This case arises out of an incident which occurred in the Restricted Housing Unit (RHU) of the United States Penitentiary, Lewisburg, on August 19, 2009. On

August 19, 2009, the Plaintiff, Michael McCullon, was housed in cell 218 in the RHU. Shortly after 11:00 a.m. on August 19, 2009, McCullon became displeased with the manner in which Correctional Officer Thomas Brouse released him from some restraints. (Docs. 44, 61.) McCullon voiced that displeasure through an act which violated prison rules: he began throwing food trays out of his cell through the cell wicket slot[1] into the cellblock corridor.

While all parties agree that these acts occurred, there is a dispute regarding how these events were perceived and each party insists that these events were perceived in strikingly different ways. For his part, Officer Brouse saw McCullon's acts as an attempted assault, and believed that McCullon was attempting to strike out at him. McCullon, in turn, denies trying to assault the officer in any way, while admitting that he threw these articles into the cellblock corridor.

Officer Brouse responded to McCullon's actions by slamming the wicket slot door closed until it could be locked. While all parties agree that the wicket slot door was forcibly closed, they dispute the effect of this action on McCullon. McCullon insists that Brouse slammed the door shut on his hand, breaking and disfiguring his

---

[1]A wicket slot is a small hinged slot in a cell door through which food trays and other items may be passed to inmates.

finger. It is unclear on the present record whether Officer Bourse admits or denies that McCullon's finger was injured during the securing of the wicket slot door.

McCullon was, however, subsequently removed from the cell by prison staff including Lieutenant Stuart. (Id.) While the parties agree that McCullon was removed from this cell on August 19, 2009, they disagree regarding how that move was accomplished. For his part, McCullon insists that correctional officials ignored his complaints of pain, and placed him in painfully tight hand restraints, needlessly inflicting pain upon him given his injured hand while they moved him. (Id.) In stark contrast, Lieutenant Stuart described the cell extraction in the following terms: "[McCullon] was placed in clean clothes, metal detected and ambulatory restraints were applied in cell 218. He was then moved to cell 204, where he was medically assessed. During the assessment it was noted that the inmate had sustained an injury to one of his fingers. This injury was not a result of the move and it is unclear at this time as to how the inmate sustained the injury. He was moved to the medical evaluation room where treatment for the injury of his finger was accomplished. He was then placed back in cell 204 without incident." (Doc. 44, ¶55.)

McCullon remained confined in cell 204, in ambulatory restraints, for approximately twenty-four hours, until the afternoon of August 20, 2009. (Doc. 44, ¶80.) While the parties agree regarding the duration of these restraints, they dispute

the conditions under which McCullon was restrained. The Defendants insist that McCullon received regular medical examinations and treatment, and his health was carefully monitored during this period. McCullon contends that he was in great pain, and his complaints of pain were ignored by Defendants Sassaman and Johnson for a full day.

Following this episode, McCullon was cited for violating prison rules by resisting staff. McCullon was given advance notice of these charges, was provided a two-day hearing on October 20 and November 12, 2009, was given the right to call witnesses, and was provided with the full panoply of procedural rights afforded inmates in this disciplinary setting. (Id.) At the close of these disciplinary proceedings, the prison Disciplinary Hearing Officer found that McCullon had violated prison rules and issued the following sanction against McCullon as a result of these violations: (a) twenty-seven days disallowed good conduct time; (b) thirty days disciplinary segregation; (c) 180 days loss of commissary privileges; and (d) 180 days loss of visiting privileges. (Doc. 44, ¶60.) In reaching this conclusion, the Disciplinary Hearing Officer relied, in part, upon a report provided by another Correctional Officer, Richard Raup, who described the August 19, 2009, incident from his vantage point. (Id.)

McCullon protested this disciplinary outcome to prison officials, while also complaining that staff had assaulted him on August 19, 2009. Special investigative staff at the prison, including Defendants Fossnot, Breese and Perrin, examined these allegations, but discounted McCullon's claims. Warden Bledsoe also declined to act favorably upon any of McCullon's claims or contentions.

## II.   Discussion

### A.   The Defendants Are Entitled To Judgment in Their Favor on Many of the Claims Set Forth in the Plaintiff's *Pro Se* Complaints

#### 1.   Standard of Review-Motion to Dismiss, or in the Alternative, Summary Judgment

Defendants have framed their motion as one seeking dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56.  When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motions shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(d).   Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so. Id.; Garcia v. Newtown Twp., No. 09-CV-3809, 2010 U.S. Dist. LEXIS 20380, 2010 WL 785808, at *3 (E.D. Pa. March 5, 2010).  However, if a motion to dismiss has been filed with an alternative request for summary judgment,

the Court of Appeals of the Third Circuit has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." Latham v. United States, 306 F. App'x 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).  Accordingly, we find that it is appropriate to treat Defendants' motion as one for summary judgment, and we find further that Plaintiff has responded to the motion accordingly.

Rule 56(c) provides that judgment should be rendered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); see also Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006) (summary judgment appropriate only if there are no genuine issues of material fact).  In considering a motion for summary judgment, a court must view the evidence and draw all inferences in the light most favorable to the non-moving party, id., and may grant summary judgment only if no reasonable juror could find for the non-movant, Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**2. McCullon's Claims Against Supervisory and Investigative Defendants Fail as a Matter of Law**

At the outset, we find that McCullon's claims against Warden Bledsoe and investigative defendants, Perrin and Fosnot, clearly fail as a matter of law. In considering claims brought against supervisory or investigative officials arising out of alleged Eighth Amendment violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

For example, supervisory liability will rest on the basis that supervisors maintained deficient policies that resulted in the Plaintiff sustaining an Eighth Amendment injury. In these kinds of cases based upon allegations of deficient policies, the Third Circuit has fashioned a four-part test based upon the reasoning of City of Canton v. Harris, 489 U.S. 378 (1989), for supervisory liability on an Eighth Amendment claim for failure to supervise. Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (3) the injury resulted from the policy or practice." Beers-Capitol, 256 F.3d at 134 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Accordingly, these approaches are summarized as follows:

> In sum, to make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk that [was] posed, the plaintiffs must meet the test from <u>Farmer v. Brennan</u>: They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious. For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, <u>Sample's</u> four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.

<u>Id.</u>

In this setting the Third Circuit has noted that, in order to defeat a motion for summary judgment, a plaintiff alleging deliberate indifference on the part of prison officials "must present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm." <u>Id.</u> at 132. McCullon's pleadings plainly do not meet this stringent standard of proof. They simply do not allege a constitutionally deficient policy or practice at the prison.

Furthermore, it is equally clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named Defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a <u>Bivens</u> constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997); <u>see</u>

also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in

nature and can only follow personal involvement in the alleged wrongful conduct

shown through specific allegations of personal direction or of actual knowledge and

acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d

1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have
> personal involvement in the alleged wrongdoing; liability cannot be
> predicated solely on the operation of *respondeat superior*. Personal
> involvement can be shown through allegations of personal direction or
> of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d
> 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of *respondeat superior*. . .
> . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
> 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
> for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
> Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not properly
> superintending the discharge" of his subordinates' duties); Robertson v.
> Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
> public officer or agent is not responsible for the misfeasances or position
> wrongs, or for the nonfeasances, or negligences, or omissions of duty, of
> the subagents or servants or other persons properly employed by or under
> him, in the discharge of his official duties"). Because vicarious liability
> is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that

> each Government-official defendant, through the official's own individual actions, has violated the Constitution

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

Nor can inmates, like McCullon, sustain Eighth Amendment claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer

any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)

> Pressley v. Beard, 266 F.App'x 216, 218 (3d Cir. 2008).

In this case, fairly construed, McCullon's claims against Defendants Bledsoe, Perrin and Fosnot consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with their processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these Defendants are entitled to be dismissed from this case.

### 3.      McCullon's Complaint Fails to State a Cause of Action Against Defendant Raup

In his complaints, McCullon also seeks to hold another correctional defendant, Correctional Officer Richard Raup, personally liable to him. The basis for McCullon's claims against Officer Raup can be simply stated: Raup was an officer who observed the August 19, 2009, dust-up between McCullon and Defendant Brouse. He then prepared a report describing what he saw in this affray and was, thus, a witness in the disciplinary proceedings brought against McCullon, which resulted in disciplinary sanctions being leveled against this inmate. McCullon contends that Officer Raup's report, which served as his testimony at the disciplinary hearing, was false, and on the basis of this bald assertion seeks hold him personally liable for damages.

In bringing constitutional claims against a correctional officer arising out of testimony or report at a prison disciplinary hearing, McCullon faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with

institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).   Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid Bivens cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim . . . so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from prison disciplinary proceedings. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected;

(2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F. App'x 241, 244  (3d Cir. 2010).

Furthermore, to the extent that McCullon seeks to hold Raup civilly liable simply for acting as a witness in these disciplinary proceedings, it has long been held that witnesses are immune from civil rights liability for testimony that they give in

proceedings. See Briscoe v. LaHue, 460 U.S. 325, 345-46 (1983). As the United States Court of Appeals for the Third Circuit has held: "[A] witness who provided testimony . . . is cloaked with absolute immunity from liability. Both Pennsylvania law and federal law command this result. See Hughes v. Long, 242 F.3d 121, 125 (3d Cir.2001) ( 'Witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony.') (citing Briscoe v. LaHue, 460 U.S. 325, 341, 345-46, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)); Pelagatti v. Cohen, 370 Pa.Super. 422, 536 A.2d 1337, 1342 (1987) (Under Pennsylvania law, 'it is well settled that private witnesses, as well as counsel, are absolutely immune from damages liability for testimony, albeit false, given or used in judicial proceedings.')." Hoffman v. Rashid, 388 F. App'x. 121, 122-123 (3d Cir. 2010).

These principles control here and compel dismissal of McCullon's claims against Defendant Raup.  Since, "filing false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided," Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007) and it is also well-settled that "[b]oth Pennsylvania law and federal law command this result [that witnesses are immune from civil liability for testifying]," Hoffman v. Rashid, 388 F. App'x. 121, 122-23 (3d Cir. 2010), McCullon's claims against

Defendant Raup, which are premised solely on his allegedly false disciplinary report statements or testimony, also fail.

**3.** **McCullon Otherwise Concedes That He is Not Seeking To Bring A Bivens Action Against Any Other Defendant Based Upon Disciplinary Proceedings Which Prolonged His Incarceration**

Furthermore, Defendants insist that, to the extent that McCullon seeks to sue prison officials for imposing punishment on him for a rules infraction, punishment that extended the duration of his incarceration, the "favorable termination" doctrine may bar such claims. The favorable termination doctrine was first framed by the Supreme Court  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), where the Court concluded that  a prisoner does not have a civil rights cause of  seeking damages where success in the suit would effectively invalidate the prisoner's underlying conviction and sentence. In reading this result, the Court adopted a "favorable termination rule" which provided  that if the success of the damages action "would necessarily imply the invalidity of his conviction or sentence," then the inmate's claims are cognizable only if it can be proven that the conviction or sentence was reversed, invalidated, or called into question by the grant of federal habeas corpus relief. Heck, 512 U.S. at 486-87. The Supreme Court subsequently applied the favorable termination rule to a state prisoner civil rights actions seeking declaratory relief and damages, like those made by McCullon here, which arise from an alleged procedural defect in the

disciplinary proceedings. <u>Edwards v. Balisok</u>, 520 U.S. 641, 643 (1997).  The scope of this doctrine in a prison disciplinary setting has been aptly described by the Supreme Court in <u>Wilkinson v. Dotson</u>, 544 U.S. 74 (2005) as follows:

> A . . prisoner's [civil rights] action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of the confinement or its duration.

<u>Wilkinson</u>, 544 U.S. at 81-82. Thus, while a prisoner may maintain civil damages claims for disciplinary action which relate solely to the conditions of his confinement, <u>Torres v. Fauver</u>, 292 F.3d. 141 (3d Cir. 2002), to the extent that McCullon's damages claims concern discipline which altered the duration of his confinement by disallowing good time, he may not pursue these damages claims under the "favorable termination" rule. <u>See</u> <u>Wilkins v. Bittenbender</u>, No. 06-2827, 2007 WL 708993 (3d Cir. 2007).

Indeed, McCullon concedes as much in his response to this motion (Doc. 61, p.16), and acknowledges that he may not pursue any such claims in this case. (<u>Id</u>.) Given this concession, the Court should decline to entertain any other claims based upon the conduct of  these disciplinary hearings.

4.      **Disputed Material Issues of Fact Presently Preclude Resolution of McCullon's Eighth Amendment Claims Against Defendants Brouse, Stewart, Johnson and Sassaman**

Finally, in his complaints McCullon advances various Eighth Amendment excessive force and deliberate indifference claims. Specifically, McCullon asserts that Defendant Brouse maliciously and sadistically injured him by slamming a wicket slot door shut on his finger on August 19, 2009, breaking and disfiguring his finger. McCullon further alleges that Lieutenant Stuart used excessive force in removing him from his cell following this incident, and contends that Lieutenants Johnson and Sassaman displayed deliberate indifference to his injuries and pain in the hours following this cell extraction. McCullon faces an exacting burden in advancing either of these Eighth Amendment claim against prison officials in their individual capacities since these claims require a specific showing of intent in order to demonstrate deliberate indifference, the legal touchstone for any Eighth Amendment claim..

In an excessive force case, that showing entails a very specific legal assessment. Where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The issue of whether

excessive force was used is one which, in proper circumstances, can be determined as a matter of law. In such cases, summary judgment is only appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, [not] will support a reliable inference of wantonness in the infliction of pain." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 322). There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Id. at 106.

Similarly, proof of a culpable subjective intent is a critical component of an Eighth Amendment deliberate indifference claim. The leading case in the Third Circuit addressing deliberate indifference in this prison context is found in Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001). In Beers-Capitol, the Third Circuit explained the basic requirements of a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively,

sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety."  Id.

This deliberate indifference standard "is a subjective standard under Farmer – the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."  Id. Thus, " '[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety' Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997) (quotation marks omitted)(emphasis added). Accordingly, "to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Davis v. Williams, 354 F. App'x 603, 605-606 (3d Cir. 2009).

As explained in Beers-Capitol, in Eighth Amendment cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known."  Id. at 131.

Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837).  This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

Here, at this early stage in the litigation, we find that the conflicting accounts of McCullon and others regarding the course of these events on August 19, 2009, at present, create a genuine dispute over material factual issues which precludes judgment as a matter of law in favor of the remaining Defendants. McCullon's evidence, if credited by a jury, could show a culpable state of mind on the part of some corrections officials. While the Defendants argue with great vigor that no reasonable fact-finder could credit this proof, we cannot at this early juncture engage in a speculative assessment of which evidence and which witnesses are more credible. That task must await another time, and another proceeding or motion. Instead where, as here, we are presented with irreconcilable factual accounts, suffice it to say that we cannot find that "there is no genuine issue as to any material facts and that the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Therefore, the summary judgment motion must be denied as to these Defendants at this time.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' motion to dismiss or in the alternative for summary judgment (Doc. 37) be GRANTED, in part, and DENIED in part as follows:

1.   The motion should be GRANTED as to Defendants Bledsoe, Raup, Fosnot, Perrin and Dreese.

2.   The motion should be DENIED as to Defendants Brouse, Stewart, Johnson and Sassaman at this time because the conflicting accounts of McCullon and others regarding the course of these events, at present, create a dispute over material factual issues which precludes judgment as a matter of law in favor of the remaining Defendants.

In light of this recommended disposition of the Defendants' motion, IT IS FURTHER RECOMMENDED that McCullon's motion in opposition to the Defendants' motion to dismiss or in the alternative for summary judgment (Doc. 56), which is actually simply a response in opposition to that motion, be dismissed as moot.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28

U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified   proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 24th day of March, 2011.


                                             **_S/Martin C. Carlson_**
                                             Martin C. Carlson
                                             United States Magistrate Judge